James Dean Walker v. State of Arkansas

5186                                    408 S. W. 2d 905

## ORDER PER CURIAM

[Original opinion delivered October 31, 1966, p. 300.]

Ed. F. McFaddin, Justice, (dissenting in part.) On October 31, 1966, this Court delivered a unanimous Opinion affirming the judgment of conviction of the Trial Court in this case. In due time a petition for rehearing was filed, which, in the alternate, prayed for permission to proceed under Criminal Procedure Rule No. 1. The per curiam of this Court this day delivered denies a rehearing in the case. I agree with the Majority in denying the rehearing.

The said per curiam, however, contains this language: "Permission is granted to appellant to file a petition in the Trial Court under Criminal Procedure Rule No. 1 for hearing on the question only of suppression of the evidence of Mary Louise Roberts and Linda Ford . . . . The hearing and all proceedings thereafter shall be conducted in accordance with Criminal Procedure Rule No. 1." I see no reason whatsoever for allowing any proceeding in the Trial Court under Criminal Procedure Rule No. 1, and it is from that portion of the per curiam that I dissent.

This Criminal Procedure Rule No. 1 was promulgated by this Court on October 18, 1965, and Paragraphs A and B of that rule read:

"(A)   A prisoner, in custody under sentence of a circuit court and whose case was not appealed to the Supreme Court, claiming a right to be released, or to have a new trial, or to have the original sentence modified on the ground:

(a)   that the sentence was imposed in violation of the Constitution and laws of the United States or this State; or

(b)   that the court imposing the sentence was without jurisdiction to do so; or

(c)   that the sentence was in excess of the maximum authorized by law; or

(d)   that the sentence is otherwise subject to collateral attack;

may file a verified motion at any time in the court which imposed the sentence, praying that the sentence be vacated or corrected.

"(B)   If the conviction in the original case was appealed to the Supreme Court, then no proceedings under this rule shall be entertained by the circuit court without prior permission of this Court."

It is because of the above quoted portions of Criminal Procedure Rule No. 1 that the Majority is now allowing the appellant to proceed in the Trial Court "on the question only of suppression of evidence of Mary Louise Roberts and Linda Ford . . ." I see no justification for allowing any further proceedings in the Trial Court in this case; and I now state some of the reasons for my said conclusions:

## I.

In the first trial of Walker, both Mary Louise Roberts and Linda Ford were witnesses and testified, and their testimony was duly preserved. We reversed the first conviction of Walker and sent the case back for a new trial (see *Walker v. State,* 239 Ark. 172, 388 S. W. 2d 13); and Walker was retried in 1965. The trial commenced on November 29, 1965, and continued until December 3, 1965. In the course of the trial the State offered the testimony that Mary Louise Roberts and Linda Ford had given in the first trial (Tr. 575-620). The Court allowed this former testimony to be read, after due foundation had been made. Here is the foundation:

(a) The said witnesses were called.

(b) It was shown that subpoenas had been issued for them (Tr. 536).

(c) Before the Court would allow the former testimony to be read there were proceedings in chambers (Tr. 537-572).

(d) Dennis L. Jones, an officer, detailed how he tried to locate Mary Louise Roberts and Linda Ford to serve the subpoenas on them.

(e) Chief Ray Vick testified as to his efforts to locate the witnesses.

(f) Chief R. E. Brians testified as to efforts to locate the witnesses.

After all of the above, the Court ruled (Tr. 557): "I think you have made sufficient proof to comply with the statute. I think you have made sufficient search, but I would rather have the girls here." So the testimony was read to the jury that was given at the former trial by the witnesses, Mary Louise Roberts and Linda Ford. It was the claim of the appellant (defendant below) at the time that the witnesses could be found, The attorney

for the defendant told the Court (Tr. 550) : "Judge, they can be seen and found. Linda can be seen at Summerfield and Martin's Cafe. Her correct address Mrs. Oliver will not give us. That is her mother. But she is definitely here in town and I will prove she has been seen almost daily and almost nightly. She frequents one of those places."

After the Court allowed the testimony to be read, the attorney for the appellant asked time to get witnesses to offer proof to show that the two missing witnesses were in the jurisdiction of the Court and reasonably available for service. The Court said (Tr. 558) : "You should have your witnesses here"; to which the attorney for the defendant responded: "I didn't know they were going to do this this soon." The Court then said to counsel: "Do you know where they are, where they can be located? If you do, tell the Court," to which counsel for appellant replied: "I can prove that nearly every night that one of these places I have told you about, that they can be seen almost nightly. The exact home address, I do not know, but I can prove that they frequent these clubs, and Martin's Cafe and Summerfield's Cafe, in particular, and also Jobe's Cafe in North Little Rock."

Now all of this admission of evidence and conversation as above recited transpired on Wednesday, December 1st, because on Tr. p. 654 the record recites that at 4:40 p.m. Wednesday, December 1st, the Court recessed until 9:30 a.m. Thursday, December 2nd, at which time the State resumed offering its evidence in chief. The record does not show that the appellant had ever served any subpoena on either of these witnesses or sought an attachment to have them brought to Court. If the attorney for the appellant knew where either of these witnesses could be found, he had only to obtain a subpoena or an attachment, and have the officer go to the place at the time that the appellant's attorney said they would be there. There is nothing in the record to show that the appellant did any of this.

Further detailing, at 9:30 Thursday, December 2nd, the State resumed offering its evidence in chief (Tr. 655); at 12:30 noon, December 2nd, the Court recessed until 1:30 (Tr. 749), at which time the State resumed offering its evidence in chief. The State rested its case at 3:15 p.m. on December 2nd (Tr. 826); and the Court then recessed until 9:30 a.m. Friday, December 3rd, at which time the Court reconvened and five pages of the transcript are consumed with motions made by the defendant (Tr. 827-832). The witnesses for the defendant testified (Tr. 832-878). There were the instructions, the argument, and the verdict returned on December 3, 1965 (Tr. 36).

Thus, the appellant had from some time in the morning of December 1st until December 3rd to obtain a subpoena or an attachment to have these witnesses brought into Court; and there is nothing in the record to show that any such was done or attempted. Rather, in Assignment No. 13 in the motion for new trial (Tr. 40), the appellant complains that the testimony of these witnesses should not have been introduced.

My first point is that the appellant showed absolutely no diligence to get these witnesses and, in the absence of diligence, he would not be entitled to a new trial; and if not entitled to a new trial, certainly he should not be entitled to proceed under Criminal Procedure Rule No.1.

## II.

My second reason relates to delay. After our Opinion in this case on October 31, 1966, the appellant filed a petition for rehearing and, in the alternate, prayed for right to proceed under Criminal Procedure Rule No. 1. Here is what the appellant's pleading says:

"In the alternative and should this Honorable Court deny appellant's petition for rehearing and the relief herein sought, the appellant respectfully moves the court for permission to proceed under Criminal Procedure Rule No. 1 so that he can

collaterally attack his sentence, which is invalid by reason of the deliberate suppression of evidence by the prosecution and the agencies of state government. In support of said alternative petition, as an exhibit thereto, and as a part hereof as though set out word for word and line for line herein, is the affidavit in deposition form of the witness Mary Louise Roberts, which affidavit constitutes newly discovered evidence and further proof positive that the State has, did, and still is unlawfully suppressing evidence favorable to the accused so as to entitle the appellant to a hearing in the trial court or a proper tribunal on a motion to vacate the sentence based on the issue of suppression of evidence; that said unlawful suppression of evidence by the prosecution and agencies of government in threatening, intimidating, and by coercion rendering unavailable testimony of a material witness constitutes a denial of due process, and deprived the appellant of a fair and impartial trial in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. This newly discovered evidence was not available to the appellant at or during the course of the trial.''

To support the statements above copied, the appellant filed in this Court on November 10, 1966, a 35-page question and answer statement of Mary Louise Roberts which was taken on July 11, 1966 between 4:30 p.m. and 5:20 p.m. in the office of the appellant's counsel. Besides the stenographer and the Notary Public, there were present at the giving of said statement the attorneys for the appellant and R. Eugene Bailey, as representing the witness, Mary Louise Roberts. The appellant had all this information on July 11, 1966, but never mentioned it to this Court until after our decision on October 31, 1966. He thus kept his ''ace in the hole'' until after we had affirmed the conviction and then belatedly attempts to assert some claimed right under Criminal Procedure Rule No. 1. He says that it was ''newly discovered evidence.'' As previously shown, he exercised no diligence to get

this evidence and should not now prevail in this belated effort, after he had chanced the result of his appeal without telling the Court of what he had. This is my second reason for voting to refuse the appellant any right to proceed under Criminal Procedure Rule No. 1.

### III.

The third and final reason for my dissent relates to the effect of the delayed recantation. We do not know what Linda Ford would say if she were now called; but the witness Mary Louise Roberts, in the statement of July 11, 1966, attempted to recant her testimony given in the first trial, in that she gave a version of matters entirely different from that to which she testified in the first trial. In her statement of July 11, 1966, she also said that she would have been at the second trial and would have testified if the officers had not kept her away from the trial. It seems ridiculous to me to expect this Court to believe any such statement when three officers of the law testified that they were trying to find the girl, and the appellant never had a subpoena or attachment issued for her. She was under oath in court when she testified in the first trial. What happened to her in the meantime, we do not know; but because this recanting witness had the effrontery to testify that officers kept her away from the second trial, this Court is now willing to have the Trial Court hold a hearing to see whether such statement is true. If the Trial Court should find the statement to be true, would there have to be a new trial of the whole case? And on such new trial would her recanted testimony be used against her original testimony? And suppose she should recant again, where would justice be?

We have repeatedly held that the recantation of a witness does not require the granting of a new trial. The matter still rests within the sound discretion of the Court. *Little v. State,* 161 Ark. 245, 255 S. W. 892; *Clayton v. State,* 186 Ark. 713, 55 S. W. 2d 88; *Sutton v. State,* 197 Ark. 686, 122 S. W. 2d 617; *Puterbaugh v. State,* 217 Ark. 686, 232 S. W. 2d 984; and *Hicks v. State,* 219 Ark. 528, 243 S. W. 2d 372. We have also held that after

the lapse of the term a recantation cannot be used as the basis of a new trial. *Satterwhite v. State,* 149 Ark. 147, 231 S. W. 886; and *State v. Martineau,* 149 Ark. 237, 232 S. W. 609.

I do not understand that Criminal Procedure Rule No. 1 changes our holdings in these regards. That rule applies only under the four sub-lettered sections of Paragraph (A) of the rule, as previously quoted. Since after the lapse of the term the recantation could not be used as the basis of a motion for new trial, the sentence of conviction in this case is not subject to collateral attack under our Criminal Procedure Rule No. 1. Yet the Majority is now allowing this *ex parte* question and answer statement of Mary Louise Roberts, given on July 11, 1966, to be used as a basis for requiring the Trial Court to have a hearing under Criminal Procedure Rule No. 1. I maintain that we should not allow the appellant to toy with the courts in any such manner. I would deny all right to proceed under Criminal Procedure Rule No. 1; and of course, I would deny any rehearing in this case.

Criminal Procedure Rule No. 1 was promulgated because of some decisions of the United States Supreme Court which have allowed convicted persons to have a further effort to escape conviction. The rule is generally applied to benighted defendants who, without the advice of counsel, were either interrogated or pleaded guilty. Neither of these situations applies here. The appellant was ably represented and, after a full five-day trial below and exhaustive briefs and oral argument on appeal, he now seeks to claim some asserted right under Criminal Procedure Rule No. 1 in an effort to obtain a third trial. I do not understand that Criminal Procedure Rule No. 1 applies in a case like this.

So, for each and all of the reasons herein stated, I respectfully dissent from that part of the per curiam order that allows any procedure under Criminal Procedure Rule No. 1 in this case; and I am authorized to state that Justice Bland joins in this dissent.